UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHANNON KAHN,<br><br>    Plaintiff,<br><br>  v.<br><br>TRANSFORCE, INC., d/b/a TRANSFORCE GROUP, a foreign profit corporation,<br><br>    Defendant. | CASE NO. C22-01086-RSM<br><br>ORDER RE: DEFENDANT'S MOTION TO DISMISS AND DEFENDANT'S MOTION TO STRIKE JURY DEMAND |

## I. INTRODUCTION

This matter comes before the Court on Defendant TransForce, Inc., d/b/a TransForce Group ("TransForce" or the "Company")'s Motion to Dismiss under Fed. R. Civ. P. 12(b)(6); Motion to Strike Jury Demand under Fed. R. Civ. P. 12(f) or, alternatively, under Fed. R. Civ. P. 39(a). Dkt. #9. Plaintiff Shannon Kahn opposes both motions. Dkt. #12. The Court finds oral argument unnecessary to resolve the underlying issues. The Court has jurisdiction pursuant to 28 U.S.C. 1332. For the reasons stated below, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion to Dismiss and GRANTS Defendant's Motion to Strike Jury Demand.

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE JURY DEMAND - 1

## II.  BACKGROUND

Plaintiff Shannon Kahn brings two causes of action against Defendant TransForce for alleged discrimination and retaliation in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60. Dkt. #1 ("Complaint") at 4. Ms. Kahn is a woman residing in King County, Washington. *Id.* at ¶ 1.1. TransForce is a Virginia for profit staffing and recruiting corporation with a focus in the transportation industry. *Id.* at ¶ 1.2.

In July 2020, Defendant TransForce hired Ms. Kahn on a three-month consulting contract. Complaint, ¶ 3.2.  In the fall of 2020, Defendant offered Ms. Kahn full-time employment as its Chief Sales Officer (CSO). *Id.*  When she accepted TransForce's employment offer, Ms. Kahn signed a non-disclosure agreement containing a jury waiver. Dkt. #9 at 13. Ms. Kahn alleges she had "early success as TransForce's CSO" where she "drove increases in the Company's … revenue" and led program development efforts "resulting in hundreds of thousands of additional revenue" in 2021. Complaint, ¶ 3.5. Ms. Kahn claims she advocated for increased diversity and inclusion in the workplace "shortly after joining TransForce," but alleges these suggestions were ignored. Complaint, ¶ 3.9. Ms. Kahn alleges that despite these contributions and her role on the TransForce leadership team, she was "treated differently than her male counterparts" because she was "excluded from key meetings…while other men on the [leadership] team were included." Complaint, ¶¶ 3.5, 3.7. Further, she claims she was labelled as the cause of conflict although she alleges her questions and concerns about TransForce's initiatives were shared by some male colleagues and TransForce customers. Complaint, ¶ 3.8.

On May 5, 2022, TransForce terminated Ms. Kahn's employment citing "too much conflict" and the complaint asserts this reason is pretext for gender discrimination and retaliation for Plaintiff's advocacy for increased diversity and inclusion. Complaint, ¶ 3.10.  Ms. Kahn

alleges that the day after her termination, TransForce announced it was hiring a man to fill her previous role. Complaint, ¶ 3.11.

On these facts, Ms. Kahn has asserted two state law claims of employment discrimination: (1) a claim that TransForce terminated her because of her sex, in violation of the WLAD; and (2) a claim that TransForce retaliated against her for her suggestions to increase workplace diversity and inclusion efforts, in violation of the WLAD.  Ms. Kahn has also filed a jury demand. *See* Dkt. #1-2 at 1.  Defendant has moved to dismiss both claims and to strike the jury demand. Dkt. #9.

### III.   DISCUSSION

**A.   Legal Standard under Rule 12(b)(6)**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

**B.   Claims under Washington Law Against Discrimination**

   1.   *Sex Discrimination under the WLAD*

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE JURY DEMAND - 3

TransForce moves to dismiss Ms. Kahn's claims under the WLAD on the basis that Ms. Kahn has failed to identify what facts support each claim. Dkt. #9 at 7. The WLAD was enacted to protect state inhabitants from practices of discrimination. RCW 49.60.010. The WLAD states that "it is an unfair practice for any employer to discharge or bar any person from employment because of…sex. RCW 49.60.180(2). Under RCW 49.60.180, an employee in a protected class has a cause of action for a discriminatory discharge from employment.

A prima facie case of gender discrimination alleging disparate treatment has four elements: 1) the employee is a member of a protected class; 2) the employee is qualified for the employment position or performing substantially equal work; 3) the employee suffered an adverse employment action; and 4) similarly situated employees not in plaintiff's class received more favorable treatment. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Davis v. West One Auto. Grp.*, 140 Wash.App 449, 459, 166 P.3d 807 (2007).

It is undisputed that Ms. Kahn is female. Dkt. #9 at 7. Ms. Kahn alleges that she was qualified for her job and was performing satisfactory work. Dkt. #12 at 9. Further, Ms. Kahn alleges that she, unlike her male colleagues, was deprived of access to her supervisor, excluded from key meetings, subjected to unique scrutiny, and terminated as a result of sex discrimination. *Id.* at 12.

TransForce argues that Plaintiff fails to state a claim of sex discrimination because she does not allege facts that she was performing her job satisfactorily at or near the time of her termination. Dkt. #9 at 7. Additionally, TransForce argues that Ms. Kahn's complaints of being treated differently and excluded by her male coworkers are merely "hurt feelings" and do not rise to the threshold of qualifying adverse employment actions. *Id.* at 9. In sum, TransForce asserts that Ms. Kahn's pleading does not allege a prima facie case of discrimination in satisfaction of

the standard set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). *Id.* at 7.  This is not the standard.

In *Sheppard v. David Evans and Associates*, the Ninth Circuit addressed the pleading standard in discrimination cases. 694 F.3d 1045 (9th Cir. 2012). A plaintiff's complaint must allege a "plausible" prima facie case of discrimination. *Id.* at 1050.  Here, Ms. Kahn's complaint alleges 1) that she is a woman; 2) she "enjoyed decades of success in corporate leadership roles" and she "drove increases in the Company's…revenue"; 3) she was excluded from leadership team meetings directly related to her job and was terminated; and 4) other men on the leadership team were included in the leadership team meetings and the Company announced it was hiring a man to fill her role the day after her termination. Complaint, ¶¶ 1.1, 3.3, 3.7, 3.10, 3.11.  As the court in *Sheppard* explained, "the allegation that comparators kept their jobs 'gives rise to an inference of age discrimination' because it plausibly suggests that Evans had a continuing need for [Sheppard's] skills and services [because her] various duties were still being performed." 694 F.3d at 1050.  Similarly, the Company's next-day announcement that it was hiring a man to fulfill her previous role gives rise to a reasonable inference that TransForce needed someone to perform Ms. Kahn's duties and plausibly suggests that employees outside her protected class were treated more favorably.

The Court finds that Ms. Kahn's complaint alleges sufficient facts in support of her sex discrimination claim under the WLAD to survive a motion to dismiss. Ms. Kahn's complaint alleges several actions taken by Defendant that could plausibly constitute disparate treatment of Ms. Kahn on the basis of sex.  *See* Complaint.  This includes Defendant's exclusion of Ms. Kahn from key leadership team meetings while other male peers were included and singling her out for causing conflict despite the fact that some of her male coworkers shared her concerns. TransForce's Motion to Dismiss is DENIED as to Ms. Kahn's gender discrimination claim.

### 2. *Retaliation under the WLAD*

The WLAD prohibits an employer from taking an adverse employment action against an employee because they "[have] opposed any practices forbidden this chapter." RCW 49.60.210(1).  To establish a prima facie case of retaliation, plaintiff must demonstrate that 1) she engaged in statutorily protected activity; 2) the defendant took some adverse employment action against her; and 3) there is a causal connection between the protected activity and the discharge. *Corville v. Cobarc Servs., Inc.*, 73 Wash.App. 433, 439, 869 P.2d 1103 (1994).  Ms. Kahn claims that TransForce terminated her in retaliation for "her opposition to practices prohibited by the [WLAD] and for actively promoting diversity and inclusion in the workplace." Complaint, ¶ 4.5. TransForce argues that Ms. Kahn has failed to allege 1) that she engaged in protected activity under the WLAD; 2) that she suffered an adverse employment action; and 3) a causal connection exists between the protected activity and the adverse employment action. Dkt. #9 at 12–13.

Ms. Kahn's assertion that "shortly after joining TransForce," she "advocated for [TransForce] to take steps to increase diversity and inclusion in the workplace" does not plausibly suggest that 1) she engaged in protected activity under the WLAD or 2) her termination, which may qualify as an adverse employment action, was casually linked to protected conduct. Complaint, ¶ 3.9.  First, Ms. Kahn's description of her alleged protected activity does not plausibly suggest that she engaged in protected activity under the WLAD.  Her assertion that she advocated to "increase diversity and inclusion in the workplace," without more, does not give to a reasonable inference that TransForce was engaged in practices forbidden by the WLAD.

Second, even if Ms. Kahn's actions rose to the level of protected activity, she fails to establish a causal connection sufficient to establish a claim of retaliation. This Court addressed the issue of a causal connection in *Macon v. United Parcel Service, Inc.*, where the plaintiff alleged she was terminated in retaliation for filing an EEOC complaint 10 months prior. No. C12-

260 RAJ, 2012 WL 5410289 (W.D. Wash. Nov. 5, 2012) at *6.  Proximity in time between the protected activity and the discharge may suggest retaliatory motivation. *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wash.App. 774, 799, 120 P.3d 579 (2005).  Even so, a court may not infer causation from temporal proximity unless the time between the employer's knowledge of the protected activity and the adverse employment action is very close. *Manatt v. Bank of Am.,* 339 F.3d 792, 802 (9th Cir. 2003) (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (noting that a lapse of even three or four months is too long to infer causation)).  Like the plaintiff in *Macon*, Ms. Kahn must show proximity between the protected activity and her termination.  Ms. Khan's alleged protected activity occurred "shortly after joining TransForce," in 2020 and her eventual termination two years later in 2022 does not, on its own, indicate a causal connection sufficient to support a claim of retaliation. Complaint ¶ 3.9.

Accordingly, the Court GRANTS TransForce's Motion to dismiss plaintiff's retaliation claim.

**C. Waiver of Jury Trial**

Under federal and Washington state law, waiver of jury trial in civil cases must be "voluntary, knowing, and intelligent." *Godfrey v. Hartford Cas. Inc. Co.*, 142 Wash.2d 885, 898, 16 P.3d 617 (2001) (citing *City of Bellevue v. Acrey*, 103 Wash.2d 203, 207, 691 P.2d 957 (1984)).

Ms. Kahn states that she did not knowingly, voluntarily, and intelligently waive her constitutional right. Dkt. #12 at 17.  She supports her argument by stating that jury waiver clauses are not typically included in non-disclosure agreements (NDA) and citing a Fifth Circuit four-factor balancing test. Dkt. #12 at 18–22.  In response, TransForce asserts that Ms. Kahn's waiver meets the knowing, voluntary, and intelligent standard because the jury waiver was conspicuously printed in bold and all capitals, she was given no deadline for reviewing the agreement, and

TransForce's Chief Human Resources Officer offered to answer Ms. Kahn's questions about the NDA, but Ms. Kahn asked none. Dkt. #9 at 13–14. The Court agrees with TransForce.

The Court finds that the jury trial waiver meets the knowing, voluntary, and intelligent standard. It was conspicuously printed in bold font in all capitals and it was the last clause of the NDA preceding Plaintiff's signature. Further, the waiver expressly states it applies to "ANY LEGAL ACTIONS RELATING TO THE EMPLOYEE'S EMPLOYMENT WITH, OR SEPARATION FROM EMPLOYMENT WITH, THE COMPANY." *See* Dkt. #9-1, Exhibit A. Further, the TransForce Chief of Human Resources' offer to answer any questions relating to the NDA creates a reasonable inference that the Plaintiff's waiver was knowing, voluntary, and intelligent.

Accordingly, the Court GRANTS TransForce's Motion to Strike jury demand under Fed. R. Civ. P. 39(a)(2).

### IV. CONCLUSION

Having reviewed Defendant's Motion, Plaintiff's Response, Defendant's Reply, and the remainder of the record, the Court hereby finds and ORDERS

1) Defendant's Motion to Dismiss Plaintiff's first cause of action for discrimination in violation of the WLAD, Dkt. #9, is DENIED.

2) Defendant's Motion to Dismiss Plaintiff's second cause of action for retaliation in violation of the WLAD, Dkt. #9, is GRANTED.

3) Defendant's Motion to Strike Plaintiff's Jury Demand, Dkt. #9, is GRANTED.

DATED this 20th day of January, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE